UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
PATRICIA ROBISHAW, Executrix of )
the Estate of H.E.R.,          )
                               )
          Plaintiff,           )
                               )   C.A. No. 13-221 S
     v.                        )
                               )
THE PROVIDENCE PROBATE COURT; PAUL )
V. JABOUR, in his Official     )
Capacity as Clerk of the       )
Providence Probate Court; and  )
CITY OF PROVIDENCE,            )
                               )
          Defendants.          )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

This matter emanates from a state court guardianship petition relating to H.E.R. and her capacity to care for herself due to Alzheimer's disease. Patricia Robishaw, as the executrix of H.E.R.'s Estate ("Plaintiff"), challenges the lawfulness and constitutionality of two fees associated with the guardianship petition: (1) the fees charged by H.E.R.'s court-appointed guardian ad litem ("GAL Fee"); and (2) the statutory fee for filing a petition in the Rhode Island Probate Court ("Probate Court Fee"). Now before the Court is Plaintiff's Motion for Summary Judgment ("Motion"). (ECF No. 31.) In it, Plaintiff asks the Court to hold that the two

fees violate Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act (Counts I and V), the United States Constitution's Due Process and Equal Protection Clauses (Counts II, III and VI), and Article I, Section 2 and 5 of the Rhode Island Constitution (Count IV and VII).  (See Pl.'s Mot., ECF No. 31; Am. Compl., ECF No. 10.)[1]  For the following reasons, Plaintiff's Motion is DENIED, and the Court sua sponte GRANTS summary judgment for Defendants.[2]

---

[1]     In her opening Memorandum, Plaintiff claims to be moving for summary judgment on only Count I (ADA claim as to the Probate Court Fee), Count II (Federal due process claim as to the Probate Court Fee), Count III (Federal equal protection claim as to the Probate Court Fee), Count IV (Rhode Island constitutional claim as to the Probate Court Fee), and Count V (ADA claim as to the GAL Fee). (See Mem. in Supp. of Pl.'s Rule 56(a) Mot. for Summ. J. ("Pl.'s Mem.") 1, ECF No. 31-1.) Both Plaintiff's and the State's briefs, however, include argument on her other two Counts, Count VI (Federal constitutional claims as to the GAL Fee) and Count VII (Rhode Island constitutional claims as to the GAL Fee). (See, e.g., Pl.'s Reply to Amicus Curiae State of Rhode Island's Mem. ("Pl.'s Reply") 35-38, ECF No. 35; Amicus Curiae, State of Rhode Island's, Mem. of Law in Supp. of Def. ("State's Opp'n") 49, ECF No. 33.) Based on Plaintiff's briefing, the Court considers Plaintiff to have moved for summary judgment on all the Counts raised in her First Amended Complaint and considers the merits of each.

[2]     The named Defendants in this suit, the City of Providence and Providence Probate Court (collectively the "City") filed a Notice of Election Not to Defend Against Plaintiff's Amended Complaint ("Notice"). (ECF No. 24.) The City made this election in an attempt to insulate itself from Plaintiff's attorney's fees. According to the City, since Plaintiff challenges the constitutionality of a state statute, it had a choice: "[E]ither defend the state statute and risk being liable for attorney's fees or choose not to defend and suffer no prejudice in cases involving declaratory and

I.  Background[3]

The events leading up to this action commenced on May 24, 2012, when Patricia Robishaw filed a petition with the Providence Probate Court asking the court to appoint Robishaw as guardian of her aunt, H.E.R.  (Stipulation of Facts ("SOF") ¶ 35, ECF No. 29.)  Robishaw accompanied the petition with a $30.00 filing fee.  (Id. ¶ 38.)  Robishaw also included a Decision Making Assessment Tool ("DMAT") from Brian Ott, M.D. (Id. ¶ 36.)  Dr. Ott was not H.E.R.'s primary care physician, (see Part 1 of Ex. to SOF PL0050, ECF No. 29-1), but nevertheless diagnosed H.E.R. with Alzheimer's disease "which will become progressively more severe over time."  (Part 2 of Ex. to SOF PL00143, ECF No. 29-2.)  Based on his assessment, Dr. Ott concluded that H.E.R. required a substitute decision-

---

injunctive relief."  (Id. at 7.)  The Court will not address the merits of the City's position.  But in light of the City's election, and to ensure that the Court had an adequate record on which to decide Plaintiff's claims, it invited the State of Rhode Island ("State") to file a memorandum in response to Plaintiff's Motion.  Plaintiff did not object and the State complied with the Court's request.  (See generally State's Opp'n, ECF No. 33.)  Consequently, the Court considers the State's brief in deciding this Motion.

[3]  The Plaintiff and the State filed a Stipulation of Facts ("SOF") along with supporting exhibits from which the Court draws the majority of this background.  (ECF Nos. 29, 29-1, and 29-2.)  The Court, however, does not rely on statements that amount to legal conclusions, such as those averring that H.E.R. was "substantially limited" in "one or more of H.E.R.'s major life activities."  (See SOF ¶ 37, ECF No. 29.)

maker for financial matters, as well as limited assistance in
health care matters, relationships, and residential matters.
(Id. at PL00146.)

On May 24, 2012, in response to Robishaw's petition, the
Providence Probate Court appointed Robert R. Nocera as
H.E.R.'s guardian ad litem ("GAL") pursuant to R.I. Gen. Laws
§ 33-15-7. (SOF ¶ 43, ECF No. 29.)  After interviewing H.E.R.
and Robishaw, as required by statute, Nocera filed a Guardian
Ad Litem Report with the Providence Probate Court.  (Id. ¶
47.)  The report contained a detailed account of Nocera's
investigation into H.E.R.'s condition and concluded, inter
alia, that "[t]he guardian ad litem is of the opinion that
[H.E.R.] is in need of at least a limited guardian at this
time."  (Part 2 of Ex. to SOF PL00129, ECF No. 29-2; Id. ¶¶
47-48.)

After Nocera filed his report, H.E.R. formally objected
to the petition and submitted a competing DMAT from her
primary care physician, Dr. Richard J. Ruggieri and a
psychologist, Dr. Eugene D'Andrea.  (SOF ¶ 51, ECF No. 29.)
Drs. Ruggieri and D'Andrea concluded that H.E.R. did not need
a substitute decision-maker in financial, health care,
relationships, or residential matters.  (Part 2 of Ex. to SOF
PL0117; ECF No. 29-2.)

4

The probate court refused to credit Dr. Ruggieri's DMAT because it relied on guidance from Dr. D'Andrea and instead ordered H.E.R. to submit to another examination by Dr. Ott. (SOF ¶ 57.)  Dr. Ott examined H.E.R. on July 19, 2012 and arrived at the same conclusions stated in his original DMAT. (SOF ¶ 59; see Part 1 of Ex. to SOF Pl0090-91, ECF No. 29-1.)

With Dr. Ott's follow-up report, the probate court conducted a chambers conference with counsel. (SOF ¶ 60, ECF No. 29.)  At the conference, it was agreed that Attorney Arlene Violet would be appointed H.E.R.'s guardian for finances and health care. (Id. ¶ 61.)  They agreed not to appoint a guardian to manage H.E.R's personal relationships or residential matters. (Id.)

Pursuant to her guardianship responsibilities, Violet filed a Universal Inventory of H.E.R.'s estate with the probate court on December 6, 2012. (Id. ¶ 65.)  Based on this inventory and pursuant to R.I. Gen. Laws § 33-22-21, the probate court clerk's office calculated the Probate Court Fee due on H.E.R.'s estate as $1,500. (Id. ¶ 67.)  After subtracting the $30.00 paid when Robishaw filed the petition, H.E.R. owed the probate court $1,470. (Id. ¶ 68.)  The court noted that H.E.R.'s "inventory [would] not be filed until additional percentage is paid." (Id. (emphasis omitted).)

In a letter to the Clerk of the probate court, H.E.R. objected to this fee, claiming it violated Title II of the ADA and both the Federal and Rhode Island Constitutions. (Part 2 of Ex. to SOF PL 000152, ECF No. 29-2.) The record does not reflect whether the probate court ever responded to this letter. However, H.E.R. never paid the fee. (See Samos Aff. ¶ 18, Amicus Curiae, State of Rhode Island's, App. 83, ECF No. 33-1.)

Around the same time, Nocera sought his GAL Fee in the amount of $1,993.75 pursuant to R.I. Gen. Laws § 33-15-7(h). (SOF ¶ 70, ECF No. 29.) H.E.R. objected to the fee on multiple grounds, including that it violated the ADA and various provisions in the Rhode Island Constitution. (SOF ¶ 71.) The probate court denied H.E.R.'s objection and ordered H.E.R. to pay a reduced $1,100 fee. (Id. ¶ 74.) H.E.R. complied, but also appealed the probate court's ruling to the Rhode Island Superior Court. (SOF ¶¶ 75-78.) The appeal is still pending.

II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is only considered "'genuine' if it 'may reasonably be resolved in favor of either party.'"

6

Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) (quoting Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)).  When deciding a motion for summary judgment, the court must "examine[] the entire record 'in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor.'"  Id. at 959 (quoting Maldonado-Denis, 23 F.3d at 581).

Further, "a district court has the legal power to render summary judgment in favor of the party opposing a summary judgment motion even though [he or she] has made no formal cross-motion under rule 56."  Nat'l Expositions, Inc. v. Crowley Mar. Corp., 824 F.2d 131, 133 (1st Cir. 1987) (internal quotation marks and citations omitted).  To do so, however, (1) there must have been "a reasonable opportunity to glean the material" facts through the discovery process, and (2) the targeted party must have received appropriate notice and opportunity to present "evidence on the essential elements of the claims or defense[s]" at issue.  Sanchez v. Triple-S Mgmt., Corp., 492 F.3d 1, 7 (1st Cir. 2007); accord Tucard, LLC v. Fid. Nat'l Prop. & Cas. Ins. Co., 567 F. Supp. 2d 215, 222 (D. Mass. 2008).  For the "notice" requirement – at least where the targeted party has moved for summary judgment – "the question is whether, given the procedural circumstances of the case, 'the original movant . . . has had an adequate

7

opportunity to show that there is a genuine issue [in the case] and that [his or her] opponent is not entitled to judgment as a matter of law.'" Nat'l Expositions, 824 F.2d at 133-34 (emphasis in original) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720, at 34 (1983)).

## III. Analysis[4]

The two fees that form the basis of Plaintiff's claims have different forms and functions. The GAL Fee compensates GALs for the advisory services they provide to Rhode Island's probate courts. Under the State's guardianship statute, the probate court must appoint a GAL whenever a petition for an

---

[4]   The State begins its opposition to Plaintiff's Motion by urging the Court to deny it on abstention and mootness grounds. The State argues that abstention is proper because the GAL Fee involves a state court order "uniquely in furtherance of the state court['s] ability to perform [its] judicial function[]." (See State's Opp'n 9, ECF No. 33 (quoting Sprint Comm., Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013)). The State, however, cites to no authority suggesting that the GAL Fee falls into the same categories as contempt orders, see generally Juidice v. Vail, 430 U.S. 327 (1977), statues allowing courts to collect judgments, see generally Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1987), or in any way implicates "the process[] by which the [s]tate compels compliance with the judgments of its courts." Id. at 13-14. Consequently, the State's Younger abstention argument fails. And Plaintiff's other abstention arguments are unavailing. As detailed herein, federal issues predominate Plaintiff's claims and the State cites to no authority that overcomes this Court's "virtually unflagging" obligation to hear cases over which it has such jurisdiction. Sprint, 134 S. Ct. at 591.
   The Court also declines to consider the State's mootness argument. Assuming, arguendo, that Plaintiff's claims are not moot, Plaintiff's Motion fails for the reasons outlined below.

adult guardianship is filed.   <u>See</u> R.I. Gen. Laws § 33-15-7(a).

The statute then specifically sets out a GAL's responsibilities:

> The duties of a guardian ad litem shall include all of the following:
> (1)   Personally visiting the respondent;
> (2)   Explaining to the respondent the nature, purpose, and legal effect of the appointment of a guardian;
> (3)   Explaining to the respondent the hearing procedure, including, but not limited to, the right to contest the petition, to request limits on the guardian's powers, to object to a particular person being appointed guardian, to be present at the hearing, and to be represented by legal counsel;
> (4)   Informing the respondent of the name of the person known to be seeking appointment as guardian;
> (5)   Reviewing the decision making assessment tool(s), petition for guardianship/limited guardianship, and the notice;
> (6)   Interviewing the prospective guardian by telephone or in person; and
> (7)   Making determinations, and informing the court of those determinations, on all of the following:
>> (i)    Whether the respondent wishes to be present at the hearing.
>> (ii)   Whether the respondent wishes to contest the petition.
>> (iii)  Whether the respondent wishes limits placed on the guardian's powers; and
>> (iv)   Whether the respondent objects to a particular person being appointed guardian;
>> (v)    Whether the respondent wishes to be represented by legal counsel.
>
> Unless waived by the court, at least three (3) days prior to the hearing, the guardian ad litem shall file a report substantially in the form as set forth in § 33-15-47 with the court

> and shall mail or hand deliver a copy to each
> attorney of record.

R.I. Gen. Laws § 33-15-7(c). For these services, the statute entitles GALs to a fee that "shall not exceed four hundred dollars ($400) which shall be paid by the petitioner for guardianship if a permanent guardian is not appointed for the respondent or by the guardian of the ward's estate if a permanent guardian is appointed." R.I. Gen. Laws § 33-15-7(h). The probate court, however, retains discretion to award fees in excess of $400 "if the circumstance[s] warrant." Id.

The Probate Court Fee, on the other hand, amounts to a court filing fee and, unlike the GAL Fee, is not limited to guardianship proceedings. By its plain language, it applies to "every petition for the appointment of a custodian, administrator, guardian, or conservator, or for the probate of a will" made in the probate court. R.I. Gen. Laws § 33-22-21(a). To file a probate court petition, the court charges 1% of a ward's or decedent's personal property that "in no event shall . . . be less than thirty dollars ($30.00) nor more than one thousand five hundred dollars ($1,500) . . . ." Id. Further, though not expressly stated in the statute, Rhode Island courts have held that pursuant to their common law authority, courts may waive probate court filing fees on behalf of indigent people. See Burgos v. McElroy, No. C.A.

10

NO. 78-3857, 1979 WL 196097, at *4 (R.I. Super. Ct. Apr. 26, 1979).

A.    Title II of the ADA[5]

Plaintiff first alleges that the GAL and Probate Court Fees violate Title II of the ADA, claiming that they amount to surcharges assessed on the disabled for services required by the Act.  Title II of the ADA provides that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  Under the regulations interpreting this provision,

> [a] public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

28 C.F.R. § 35.130(f).[6]  Put another way, charges for services violate the ADA (1) when the fee pays for services required by

---

[5]    Although Plaintiff asserts separate claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, Plaintiff concedes that, at least as related to this Motion, the analysis for both claims is the same and limits her discussion to the ADA.  (Pl.'s Mem. 1 n.1, ECF No. 31-1.) The Court will do the same.

the ADA; and (2) when nondisabled people do not also incur the fee.  <u>See</u> <u>Dare v. California</u>, 191 F.3d 1167, 1711 (9th Cir. 1999); <u>Duprey v. State of Conn., Dep't of Motor Vehicles</u>, 28 F. Supp. 2d 702, 706 (D. Conn. 1998); <u>see also</u> <u>Klingler v. Dir., Dep't of Revenue, State of Mo.</u>, 433 F.3d 1078, 1082 (8th Cir.), <u>opinion supplemented on reh'g</u>, 455 F.3d 888 (8th Cir. 2006).

The Court will assume, without deciding, that H.E.R. was a "qualified individual with a disability," a threshold requirement for coverage under the ADA.  <u>See</u> <u>Parker v. Universidad de Puerto Rico</u>, 225 F.3d 1, 5 (1st Cir. 2000) (reviewing the required elements of an ADA claim under Title II).  Nonetheless, Plaintiff's claim still fails because she has not demonstrated that either fee is a discriminatory surcharge against the disabled.

> 1. The GAL Fee pays for services primarily provided to the court, not to putative wards.

Plaintiff's argument that the GAL Fee constitutes an impermissible surcharge fails on the test's first element. She attempts to cast GALs as providing communication and

---

[6]  "Because Congress explicitly authorized the Attorney General to promulgate regulations under the ADA, <u>see</u> 42 U.S.C. § 12134(a), the regulations 'must [be given] legislative and hence controlling weight unless they are arbitrary, capricious, or plainly contrary to the statute[.]'" <u>Parker v. Universidad de Puerto Rico</u>, 225 F.3d 1, 5 n.5 (1st Cir. 2000) (alteration in original) (quoting <u>United States v. Morton</u>, 467 U.S. 822, 834 (1984)).

interpretive services for disabled individuals. Though Plaintiff's argument is less than clear, she seems to assert that these services are "services required by the ADA" for two reasons: (1) because they fall within Title II's definition of "auxiliary aids and services," see 42 U.S.C. § 12103(1); and (2) more generally, because they protect disabled individuals' due process rights by providing them access to the courts. (Mem. in Supp. of Pl.'s Rule 56(a) Mot. for Summ. J. ("Pl.'s Mem.") 23–24, 36, ECF No. 31-1.). Neither argument is convincing.

With regard to her "auxiliary aids and services" argument, Plaintiff is correct that GALs provide some information to putative wards. Under the statute, they must (1) explain to the respondent "the nature, purpose, and legal effect" of a guardianship appointment; (2) explain the hearing procedure to the respondent including the respondent's rights under the statute; and (3) inform the respondent of the name of the person seeking appointment as the guardian. R.I. Gen. Laws § 33-15-7(c)(2)–(4). But this does not transform a GAL into a service akin to those defined in 42 U.S.C. § 12103(1). There, the statute expressly limits "auxiliary aids and services" to those "similar" to "methods of making" "aurally" and "visually" delivered materials available to individuals with "hearing" or "visual" impairments. 42 U.S.C. § 12103(1).

Plaintiff points to no authority that suggests this definition is so broad as to include the explanations GALs provide to putative wards.

And Plaintiff's second argument – that GALs provide a required ADA service by ensuring "pre-deprivation process and intermediated [sic] access . . . to the probate court" (Pl.'s Mem. 36, ECF No. 31-1) – fares no better.  She bases it on the Supreme Court's holding in Tennessee v. Lane, 541 U.S. 509 (2004), where the Court considered whether Title II constitutes a valid exercise of Congress' authority under § 5 of the Fourteenth Amendment.  Id. at 533-34.  The Court held in the affirmative, at least as applied "to the class of cases implicating the fundamental right of access to the courts[.]" Id.  As the Court held, this is because Title II's "duty to accommodate is perfectly consistent with the well-established due process principle that, 'within the limits of practicability, a State must afford to all individuals a meaningful opportunity to be heard' in its courts."  Id. at 532 (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)). Seizing this language, Plaintiff argues that the GAL Fee is impermissible because it charges the disabled for services that ensure they have adequate access to the probate court.

The Court agrees that the ADA requires public entities to provide the disabled adequate access to courts.  But Plaintiff

14

fails to show how the GAL Fee violates this requirement. First, as explained in the Court's subsequent discussion of Plaintiff's constitutional claims, the GAL Fee did not affect H.E.R.'s access to the Probate Court. (See infra Section III.B.) Prior to paying the fee, Plaintiff (1) brought her petition, (2) the probate court appointed a GAL, (3) the GAL performed his statutory services, and (4) H.E.R. was able to contest the GAL's recommendations. Indeed, after the GAL submitted his report to the probate court, H.E.R. objected to the GAL's recommendation, and ultimately, with the help of her attorney, entered into a settlement to resolve the petition. Thus, Plaintiff has not demonstrated that the GAL Fee created an "obstacle[] to [H.E.R.'s] full participation in [the] judicial proceeding[]" that in any way implicated her due process rights. Lane, 541 U.S. at 523.

Further, and more to the point, Plaintiff overstates the "communication" or "interpretive" services GALs actually provide to putative wards in Rhode Island guardianship proceedings. Although, as detailed above, GALs do communicate with putative wards, their primary purpose is to assist the court in its guardianship determination. For example, even when communicating with a putative ward, GALs must gather information for the court. Among other things, they must find out whether the putative ward wishes to contest a petition,

limit the powers of a guardian, object to a particular person being appointed guardian, and be represented by counsel.  See R.I. Gen. Laws § 33-15-7(c).  And GALs must also review the information submitted in support of a guardianship petition and interview the prospective guardian.  Id.  With this information, GALs provide a report to the court summarizing their findings and send a copy of the report to each attorney of record.  See id.  Submission of this report constitutes GALs' work product in the guardianship proceeding and ends GALs' statutory responsibilities.  A GAL does not remain involved in the proceeding to ensure the putative ward understands them and does not advocate on the ward's behalf. These roles are left to the ward's counsel, family members, guardian, or the court.  Thus, as multiple courts have similarly concluded, GALs primarily function as the court's independent investigator.  See Cok v. Cosentino, 876 F.2d 1, 3 (1st Cir. 1989) (discussing a GAL's role in a Rhode Island child custody action and noting that "[a] GAL typically gathers information, prepares a report and makes a recommendation to the court regarding a custody disposition"); see also Bauer v. Texas, 341 F.3d 352, 360 (5th Cir. 2003) ("[T]he guardian ad litem has merely the same authority as a court investigator, which is to investigate and report back to the judge whether the evidence warrants appointment of a

guardian for the putative ward."). Contrary to Plaintiff's argument, GALs do not ensure disabled respondents' access to a court, at least not to a level that implicates Title II of the ADA. See Lane, 541 U.S. at 531-32 ("But Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities . . . ."). For this reason, the GAL Fee does not constitute an unlawful surcharge under the ADA and Plaintiff is not entitled to summary judgment on Count V.[7]

> 2.   The Probate Court Fee is paid by all users of the probate court, not just disabled users.

Like the GAL Fee, the Probate Court Fee also does not violate the ADA, though for a different reason. By its express terms, it fails to satisfy the second requirement of a "surcharge" – that the fee apply only to the disabled. As noted above, the Probate Court Fee applies to all users of the probate court, not just those involved in adult guardianship proceedings. See R.I. Gen. Laws § 33-22-21(a) ("The fees in probate courts shall be as follows:  for every petition for the appointment of a custodian, administrator, guardian, or conservator, or for the probate of a will . . . .").

---

[7]   The State also argues that the GAL Fee is not exclusively applied to the disabled and, thus, fails to satisfy the second requirement of a surcharge under the ADA. Since the fee does not satisfy the first element, the Court need not reach this argument.

17

Plaintiff does not argue that each subset of individuals subject to the probate court fees is "disabled" under the ADA. Instead, she urges the Court to overlook one class of individuals who must pay the fee – those seeking to probate a will.  According to Plaintiff, this group should not factor into the Court's analysis because it includes the estates of the deceased.  But this argument is without merit.  Although the case on which Plaintiff principally relies defined "surcharge" as a fee "that nondisabled <u>people</u> would not incur," the court does not distinguish between actual people and other legal entities, such as corporations or an individual's estate:

> [i]f nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge on a "required" measure. Thus, for example, a state can charge a fee for disabled license plates so long as it charges the same fee for nondisabled license plates.

<u>Dare</u>, 191 F.3d at 1171 (emphasis added); <u>see also</u> <u>Citizens United v. FEC</u>, 558 U.S. 310, 342 (2010) (collecting cases in which the Supreme Court has recognized that First Amendment protection extends to corporations).  What matters is whether or not a fee is levied exclusively on the disabled or whether it is shared among all entities using a service.  Since Plaintiff has not shown that Rhode Island only levies the Probate Court Fee on the disabled, Plaintiff has failed to

establish the second element of a surcharge violative of Title
II and, accordingly, Plaintiff is not entitled to summary
judgment on Count I.

B.   Due Process and Equal Protection Claims

For her constitutional arguments, Plaintiff claims that
both the GAL and Probate Court Fees restrict disabled
individuals' access to the courts, thereby offending their due
process and equal protection rights.   Plaintiff's arguments,
however, are at best underdeveloped.   Her analysis provides
little distinction between her due process and equal
protection claims and no distinction between the Federal and
State Constitutions under which she asserts them.   (See Pl.'s
Mem. 44-46, ECF No. 31-1; Pl.'s Reply to Amicus Curiae State
of Rhode Island's Mem. ("Pl.'s Reply") 35-38, ECF No. 35.)
Instead, Plaintiff merely asserts that the GAL and Probate
Court Fees violated H.E.R's rights because they amount to
"surcharge costs, fees, and taxes" that "burden the right of
individuals with disabilities to access probate courts
. . . ." (Pl.'s Reply 35, ECF No. 35.)

To be sure, Plaintiff's basic premise is correct – fees
that deprive a class of individuals access to the courts can
offend due process and equal protection principles.   See
M.L.B. v. S.L.J., 519 U.S. 102, 110-15 (1996) (summarizing the
Supreme Court's application of due process and equal

protection principles to court fees in the civil and criminal contexts).   Particularly in civil cases, however, only a narrow subset of fees actually presents constitutional violations.   Id. at 113; see also Boddie, 401 U.S. at 382 (cautioning "[w]e do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause").   And Plaintiff has not articulated how the GAL and Probate Court Fees fit into this narrow subset of fees.

For starters, Plaintiff has not established a threshold requirement of her argument – that the fees deprived her of access to the probate court.   Both Boddie and Lane, the two cases on which Plaintiff principally bases her constitutional arguments, turn on the fact that the barriers in each case took away a person's ability to have a meaningful hearing before a court.   In Lane the barriers were physical – architectural structures (or the lack thereof) that prohibited individuals with disabilities from physically entering the court, 541 U.S. at 513-14; in Boddie, the barriers were financial – court filing fees that precluded indigent individuals from pursing their divorce cases, 401 U.S. at 380-81.   At least based on the record before the Court, the same cannot be said for Plaintiff.   As noted above, before being assessed the GAL and Probate Court Fees, H.E.R. received GAL

20

services, objected to the GAL's recommendation, received a hearing before the probate court, and entered into a mutual settlement of the guardianship petition. The only evidence Plaintiff claims shows she was somehow denied access to the courts is the probate court's notation that it would not process H.E.R's inventory until she paid the Probate Court Fee. Plaintiff, however, presents no evidence that this notation, or Plaintiff's failure to pay the fee, actually affected her access to the court, and based on the stipulated facts before the Court, the Court can find none. Plaintiff, thus, has not established that either fee violated her constitutional rights.

And even assuming that H.E.R.'s failure to pay one of the fees deprived her of probate court services, Plaintiff has not established that this deprivation offends her due process or equal protection rights. Plaintiff relies on Harper v. Virginia State Board of Elections, 383 U.S. 663 (1966), to argue "[i]t is axiomatic that fundamental rights, such as the right to access courts, cannot lawfully be taxed." (Pl.'s Mem. 45, ECF No. 31-1.) This assertion, at least as applied to court fees, is incorrect.[8] "[I]n the mine run of cases

---

[8] In Harper v. Virginia State Board of Elections, the Supreme Court considered poll taxes and held "that a State violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes the affluence of the voter or

. . . [s]tates are not forced by the Constitution to adjust all [court] tolls to account for 'disparity in material circumstances.'" M.L.B., 519 U.S. at 123-24 (quoting Griffin v. Illinois, 351 U.S. 12, 23 (1956) (Frankfurter, J., concurring in judgment)). Instead, courts undertake a case-by-case analysis of court fees to determine the scope of the burden the fees place on litigants. See generally M.L.B., 519 U.S. 102. In civil cases, for a court fee to offend due process and equal protection, it must "work a unique kind of deprivation" such as depriving individuals of the ability to defend against "the awesome authority of the [s]tate to destroy permanently all legal recognition of the parental relationship." Id. at 127-28 (internal quotation marks, alteration, and citation omitted). Here, Plaintiff provides no argument or authority suggesting that her alleged deprivation rises to this level. Consequently, Plaintiff has

---

payment of any fee an electoral standard." 383 U.S. 663, 666 (1966). As the Court noted, "[w]e have long been mindful that where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined." Id. at 670. The Court then concluded that poll taxes offended equal protection, because "wealth or fee paying has, in our view, no relation to voting qualifications; the right to vote is too precious, too fundamental to be so burdened or conditioned." Id. As detailed in M.L.B. v. S.L.J., 519 U.S. 102 (1996), and herein, the Court has not extended this sweeping rule to court fees, but instead analyzes court fees on a case-by-case basis to determine if they offend equal protection or due process principles.

failed to carry her burden at summary judgment as to Counts II, III, IV, VI, and VII.

    C.   Defendants' Entitlement to Summary Judgment

That Plaintiff has failed to carry her burden at summary judgment on any of her claims, however, does not mean that this case must proceed to trial. As detailed above, district courts have the authority to grant summary judgment to the non-moving party when "1) there has been a reasonable opportunity to glean material facts through the discovery process, and 2) the targeted party received appropriate notice and opportunity to present evidence on the essential elements of the claim or defense." Tucard, 567 F. Supp. 2d at 222 (citing Sanchez, 492 F.3d at 7). Here, Plaintiffs had six months to conduct fact discovery (see Standard Pretrial Order, EFC No. 17), and ample opportunity to move to reopen discovery had Plaintiff believed she needed additional information to support her Motion or to counter the State's defenses. Further, in her own briefs, Plaintiff had "an adequate opportunity to show that there is a genuine issue" and that Defendants are "not entitled to judgment as a matter of law." Nat'l Expositions, 824 F.2d at 133–34 (emphasis in original) (quoting Wright et al., supra, § 2720, at 34). As detailed above, each of Plaintiff's claims fail as a matter of law, and summary judgment should be granted in favor of Defendants.

The need for the Court to _sua_ _sponte_ grant summary judgment to the Defendants here is made even more acute by the Defendants' "rope-a-dope"[9] strategy of non-engagement.   The fact that the City felt it had so little at stake in the outcome of this challenge, and wished to avoid even the possibility of a fee assessment should not hamstring this Court from appropriately disposing of fully developed legal issues.

IV.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED and the Court GRANTS, _sua_ _sponte_, summary judgment for Defendants on all counts.


IT IS SO ORDERED.


_____
William E. Smith
Chief Judge
Date: September 12, 2016




_____

[9]   "Rope-a-dope" refers to a boxing style made famous by Muhammad Ali during his "Rumble in the Jungle" in 1974 against George Foreman.   In it, a boxer assumes a defensive stance, in which he or she lets his or her opponent attack so the opponent exhausts himself or herself before the boxer counter attacks.   Unlike here, the counter-attack is typically mounted by the boxer, not a friend or amicus curiae.

24